**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2009

Charles R. Fulbruge III
Clerk

No. 09-60225
Summary Calendar

JOEL SORIANO-DOMINGUEZ,

Petitioner,

versus

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals
No. A94 923 337

Before DAVIS, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Joel Soriano-Dominguez, a Salvadoran national, contends that he belongs
to a particular social group consisting of "non-criminal witnesses who have re-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

ported crimes." On that basis, he sought asylum pursuant to 8 U.S.C § 1158-(b)(1). The immigration judge ("IJ") denied the application, and the Board of Immigration Appeals ("BIA") agreed. Because Soriano-Dominguez does not belong to a particular social group, we deny the petition.

I.

In December 2004, three members of the Salvadoran gang Mara Salvatrucha ("MS-13") robbed Soriano-Dominguez and his grandmother in their house, taking their television, DVD player, and other valuables. The gang members threatened to kill Soriano-Dominguez and his grandmother if they reported the robbery to the police.

Soriano-Dominguez reported it anyway. After five months of investigation, the police put two gang members in jail for two weeks. Upon their release, the gang members returned to Soriano-Dominguez's home, seeking retribution. They beat him with a bat and physically abused his grandmother.

For the next year, MS-13 members harassed Soriano-Dominguez and threatened to kill him if he did not join their gang. His grandmother was no longer a target, and Soriano-Dominguez testified that MS-13 continued to pursue him only because it wanted him to join the gang. Soriano-Dominguez did not wish to join it and feared that they would kill him if he remained in El Salvador. He fled to the United States, where he was apprehended by immigration authorities.

In July 2007, Soriano-Dominguez appeared before an IJ, according to whom the evidence did not establish that Soriano-Dominguez was targeted because of his membership in a "particular social group." Rather, the gang seemed primarily interested in recruiting Soriano-Dominguez. The fact that the gang no longer threatened his grandmother indicated that it was not targeting a "group," much less a "particular social group."

The BIA affirmed the IJ's decision. Specifically, it found that Soriano-Dominguez had failed to prove that he suffered or feared persecution on account of a statutorily protected ground. The purported group of "non-criminal witnesses who have reported crimes" lacked the requisite social visibility to qualify as a "particular social group."

## II.

We review the BIA's factual findings for substantial error and its legal conclusions de novo. *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007). We may reverse only if the evidence *compels*––not just supports––a contrary conclusion. *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994).

An alien seeking asylum under 8 U.S.C. § 1158(b)(1) must first establish "refugee" status. Specifically, he must show that he is unable or unwilling to return to his country of citizenship or residence because of a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Only persecution on account of a protected ground will qualify an alien for asylum. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

Soriano-Dominguez claims membership in a particular social group consisting of "non-criminal witnesses who have reported crimes." That is not a social group for which the immigration laws provide protection. *In re C-A*, 23 I & N Dec. 951, 960 (BIA 2006); *Scatambuli v. Holder*, 558 F.3d 53, 60 (1st Cir. 2009). A social group must be readily identifiable and have a "common, immutable characteristic" that the members are powerless to change or that is so fundamental to their identities or consciences that they should not be required to change. *In re C-A*, 23 I & N Dec. at 955. Soriano-Dominguez has not established that "non-criminal witnesses who have reported crimes" are readily identifiable or have immutable characteristics that they should not be asked to change.

Moreover, criminal retaliation against informants is not a basis for asylum, and "holding otherwise would transform asylum into a garden variety witness protection program." *Calel-Chitic v. Holder*, No. 08-60440, 333 F. App'x 845, ___, 2009 WL 1686609, at *2 (5th Cir. Jun. 16, 2009) (per curiam) (unpublished).

In summary, Soriano-Dominguez has not established a well-founded fear of persecution on account of membership in a particular social group. The purported social group in which he claims membership is not protected under the immigration laws. *See Soriano v. Holder*, 569 F.3d 1162, 1166 (9th Cir. 2009). In addition, his testimony seems to indicate that the threats he has suffered are individualized and particular, motivated by the gang's desire to recruit him and the individual members' desire to settle the score. The fact that gang members no longer pursue his grandmother indicates that MS-13 is not interested in Soriano-Dominguez as a non-criminal witness who has reported a crime––a status he shares with his grandmother. And Soriano-Dominguez testified that gang members were looking for him only because they wanted him to join the gang.

The petition for review is DENIED.